United States District Court
Eastern District of Michigan

Antoiwan Gibson,

    Petitioner,                      Case No. 25-cv-12297

    -vs-

                                        Honorable F. Kay Behm

Eric Rardin, Warden,

    Respondent.
_____/

## Response to Petition for Writ of Habeas Corpus

    The Court should deny Antoiwan Gibson's petition for a writ of habeas corpus under 28 U.S.C. § 2241. Gibson has not exhausted his administrative remedies, so the Bureau of Prisons (BOP) has not responded formally to him, and he is required to exhaust his administrative remedies before petitioning the Court for review and relief.

    If the Court reviews Gibson's claim substantively, his petition also fails. It is undisputed that Gibson is receiving Federal Time Credits (FTCs) for his participation in the BOP programming. That the FTCs have not been applied and have not resulted in his transfer to a Residential Reentry Center (RRC) or to home confinement is the result of two atypical factors: (1) the Michigan Department of Corrections (MDOC) detainer lodged against him in 2017 and (2) a concurrent sentence imposed on the state case for which there is a detainer. These two factors

combined have complicated Gibson's transfer out of FCI Milan to either MDOC custody or prerelease custody at a RRC or to home confinement.

The government previously filed motions to extend its response time (ECF Nos. 6 and No. 8) because the BOP advised that Gibson's transfer to the MDOC or to a RRC was imminent. However, while his transfer is forthcoming, to date, Gibson remains in custody at FCI Milan. Once he is transferred to MDOC custody, his petition will be moot. When Gibson is transferred to MDOC custody, the government will file, with permission from the Court, a supplemental brief or a motion to dismiss based on mootness.

        Respectfully submitted,

        Jerome F. Gorgon, Jr.
        United States Attorney

        s/ Julie A. Beck
        Julie A. Beck
        Assistant United States Attorney
        211 West Fort Street, Suite 2001
        Detroit, MI 48226
        (313) 226-9717
        julie.beck@usdoj.gov

Dated: November 14, 2025

United States District Court
Eastern District of Michigan

Antoiwan Gibson,

       Petitioner,                                Case No. 25-cv-12297

       -vs-

                                                   Honorable F. Kay Behm

Eric Rardin, Warden,

       Respondent.
_____/

## Brief in Support of Response to
## Petition for Writ of Habeas Corpus

### Issue

Should Gibson's petition for a writ of habeas corpus under 28 U.S.C. § 2241 be denied because he failed to exhaust his administrative remedies?

Should Gibson's petition be denied because he is receiving FTCs for his participation in the BOP's programming and whether those FTCs are applied turns on reconciliation of his state concurrent sentence and the MDOC-lodged detainer?

### Background

Gibson is serving 180 months (15 years) for conspiracy to possess with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), 846, followed by four years of supervised release after pleading guilty in the Eastern District of Tennessee. *See* Case No. 3:15-cr-00066, Eastern District of Tennessee, *United States v. Gibson, et al.* (Exh. 1, ECF No.101:

3

Judgment, PageID.529-30). From Detroit, Michigan, Gibson sourced his co-conspirators in the Knoxville, Tennessee area with heroin. (Exh. 2, ECF No. 56: Rule 11 Plea Agreement, PageID.188). There are allegations that the heroin distributed by this conspiracy killed some of its customers. (Exh. 3, ECF No. 88: Gov't Sentencing Memo, PageID.351-52).

Gibson is currently housed at FCI Milan, and his full term expires March 17, 2030. (Exh. 4: Sentence Monitoring Computation Data, p. 3). His current First Step Act projected release date is January 4, 2027. (*Id.* at p. 1).

Gibson has received credit for time served while in State custody. (*Id.* at pp. 2-3). He is participating in the BOP programming and is accumulating credits (FTCs) under the First Step Act. (Exh. 5: FSA Time Credit Assessment, pp. 1-2). As of August 16, 2025, Gibson had accrued 2,430 program days, 820 of which could be applied towards release to a RRC or home confinement and 365 days toward release. (*Id.* at p. 1).

Gibson filed a request for an administrative remedy on June 6, 2025, challenging the BOP's calculation and application of his First Step Act credits. (Exh. 6: BOP Administrative Remedy Record, p. 2). He also requested immediate transfer to prerelease custody. (ECF 1: Petition, PageID.25). However, he did not pursue any appeals or continue with any other administrative procedures. (*Id.*). Gibson contends that he attempted to use the administrative process but was

thwarted by the BOP staff. But per SENTRY, the BOP database that tracks administrative records, Gibson did not exhaust his potential remedies. (*Id.*). Instead, Gibson petitioned for a writ of habeas corpus under 28 U.S.C. § 2241.

At the heart of this petition are additional factors. Gibson's incarceration is more complicated than most: he is subject to a detainer filed by the MDOC for a concurrent 2017 drug offense—delivery/ manufacture of a controlled substance— for which he was sentenced for 9–40 years. (Exh. 4: Sentence Monitoring Computation Data, at p. 4; Exh. 5: FSA Time Credit Assessment, p. 2). Under normal circumstances, an active detainer for pending or unresolved charges will not prevent an inmate from using FTCs to transfer to prerelease custody—to either a Residential Reentry Center (RRC) or to home confinement. (Exh. 7: BOP Memorandum re: Detainers, pp. 2-3).

However, under guidance from the Residential Reentry Management Branch (RRMB), if an inmate has a formal detainer *and* a concurrent state term of incarceration, the inmate cannot go immediately to a RRC. (*Id.* at p. 4). Rather, the BOP must inquire whether the state wants to enforce the detainer and take custody of the inmate. (*Id.*). If, within 30 days, the state confirms they want custody of the inmate, the BOP will release the inmate to the state on the date he would have been eligible to transfer to prerelease custody. (*Id.*). If the state does not want to enforce the detainer immediately, the inmate can transfer to the halfway house as planned.

Further complicating this process is the fact that if a state enforces a detainer rather than allowing the inmate to transfer to prerelease custody, the state cannot then parole him from custody prior to the completion of his federal sentence. (*Id.*). Gibson's sentence completion date is January 4, 2027. (Exh. 8: Memorandum of Prisoner Transfer to State Custody, p. 8).

Here, FCI Milan communicated with MDOC on November 20, 2024, and on March 3, 2025, but MDOC did not confirm they wanted to claim Gibson until April 14, 2025. (*Id.* at pp. 2, 4, 8, 9). After MDOC finally confirmed they wanted to enforce the detainer, the BOP initiated the process of transferring Gibson to MDOC on May 30, 2025. (*Id.* at p. 5). Because it appears that Gibson is currently eligible for parole on his state term, this process required confirmation from MDOC that it would not parole Gibson before his federal term was completed. On information and belief, that has not happened to date. But the BOP is actively working to make one of two things happen: (1) transfer Gibson to MDOC after confirmation that MDOC will not release him prior to January 4, 2027, the end of his federal term; or (2) transfer Gibson to a RRC based on his earned FTCs.

As an initial matter, the Court could deny the habeas petition because Gibson did not exhaust his administrative remedies. The complicated procedural matters at play highlight why exhaustion is important: interpretation of memoranda, policy statements, and administrative calculations are best done by the

6

BOP, the agency with the expertise and responsibility to administer those memoranda, policy statements and administrative tasks.

But if the Court determines it should consider the merits of the petition, Gibson likewise fails on this record. He is eligible to benefit from First Step Act programming, and he has been earning credits reflecting that participation. The issue here is that Gibson's two convictions—one federal and one state—are concurrent, and MDOC has lodged a detainer against Gibson based on the state conviction. Thus, *application* of the FTCs has not occurred to date, and he has not been transferred either to MDOC custody or prerelease custody to an RRC or home confinement. Those two factors make the typical application of earned FTCs and subsequent typical transfer to prerelease custody more complicated.

It is important to follow the proper protocol and resolve the detainer and concurrent sentences conflict. If Gibson were released to a RRC or home confinement with a detainer still in place, he is at a much higher risk, if arrested, of being considered an "escapee." If this were to happen, there would be an interruption in his federal sentence, and the BOP would not have primary jurisdiction over him. *See* Petitioner's Brief, ECF No. 1, PageID.25. It is in Gibson's interest for the BOP to get this right.

**Argument**

**Gibson failed to exhaust his administrative remedies.**

The Bureau of Prisons' administrative remedy process allows an inmate to seek formal review of a complaint relating to any aspect of his confinement. *See* C.F.R. § 542.10 *et seq.* If the inmate objects to the administrative result, he may appeal within THE BOP's system. Only after exhaustion of the administrative process may an inmate seek redress in the federal courts. *United States v. Wilson,* 503 U.S. 329, 334-36 (1992); *Luedteke v. Berkebile*, 704 F.3d 465, 466 (6th Cir. 2013); *Fazzini v. v. Northeast Ohio Corr. Ctr.,* 473 F.3d 229, 231 (6th Cir. 2006).

Exhaustion protects "administrative agency authority" and "promotes efficiency." *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (citing *McCarthy v. Madigan,* 503 U.S. 140, 145 (1992)). This exhaustion requirement allows "the Bureau of Prisons . . . the opportunity to consider the application of its policy to [a prisoner's] claim before the matter is litigated in the federal courts," *Urbina v. Thoms*, 270 F.3d 292, 295 n.1 (6th Cir. 2001), and it "gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006).

Here, Gibson did not exhaust his administrative remedies, so the petition should be dismissed. The BOP has no records showing that Gibson continued the administrative process after denial of the initial request. Gibson's projected release

date under the First Step Act is January 4, 2027, so there is still time for the BOP to conduct administrative review of an appeal of the decision denying him eligibility. (Exh. 4: Sentence Monitoring Computation Data, p. 1). Gibson's claim that exhaustion is unavailable due to time constraints is simply not true. While Gibson may be frustrated by the process and purported delay by prison staff to respond, "he cannot abandon the process or fail to fully exhaust formal administrative remedies as to his specific claim. . . . [Gibson] must fully complete the established administrative process, or at least attempt to do so, before seeking federal habeas relief under § 2241. His habeas petition is premature and must be dismissed." *Fontanez v. Rardin*, No. 2:23-CV-11015-TGB-KGA, 2024 U.S. Dist. LEXIS 91906, at *5-6 (E.D. Mich. May 22, 2024).

Gibson's failure to exhaust has not promoted an efficient process nor has it protected the BOP's administrative agency authority under *Woodford*. *Woodford*, 548 U.S. at 89. Having this Court and the government intervene to explain the intricacies of his incarceration and the impact of the state detainer and concurrent sentence is inefficient. Exhaustion is a requirement for a reason.

**The BOP's decision to deny Gibson the early release benefit under 18 U.S.C. § 3621(e) does not entitle him to habeas relief based on the specific circumstances of his concurrent sentences and the MDOC detainer.**

A federal inmate may seek a writ of habeas corpus under 28 U.S.C. § 2241 to challenge the way his sentence is being executed. *Capaldi v. Pontesso*, 135 F.3d

9

1122, 1123 (6th Cir. 1998); *Hernandez v. Lamanna*, 16 F. App'x 317, 320 (6th Cir. 2001). Gibson's claim is understandable; but his situation is uncommon, and the procedure thus far has been inconsistent.

First, federal inmates may earn time off their custodial sentences in a couple of ways. The First Step Act of 2018 provides opportunities for federal inmates to earn and receive sentencing credits (FTCs). 28 U.S.C. § 3632(d)(4)(A). One of the First Step Act's goals is to reduce recidivism by federal inmates by providing access to "recidivism reduction programs" and encouraging other "productive activities." Participation in such programming and activities earns an inmate FTCs that can reduce time served in prison. 18 U.S.C. § 3632(a), (d)(4). Earned FTCs can be applied toward early transfer to prerelease custody or supervised release. 18 U.S.C. § 3632(d)(4)(C). However, the FSA is silent about what happens if there is a state detainer and a concurrent sentence. Even the BOP's guidance, "FSA Policy Program Statement 5410.01 CN-2," about how to address this situation is muddy. (Exh. 9: FSA Policy Program Statement, p. 3, 18, 21).

Here, Gibson has participated in FSA programming since about 2018, and he has earned FTCs as a result. (Exh. 5: FSA Time Credit Assessment). Per the memorandum regarding his transfer to state custody, Gibson is eligible "to apply his earned First Step Time Credits towered [sic] a community-based program." (Exh. 8: Memorandum of Prisoner Transfer to State Custody, p. 2). However,

10

resolution of his detainer and concurrent sentence remains unsolved. (*Id.*). Until appropriate coordination and resolution between MDOC and the BOP concludes, Gibson must remain in custody at FCI Milan.

## Conclusion

Gibson's petition for a writ of habeas corpus should be denied for failure to exhaust his administrative remedies.

If the Court addresses the merits of Gibson's petition before he is transferred from FCI Milan, the Court should still dismiss the petition because the BOP has calculated Gibson's FTCs under the First Step Act correctly. It is true that application of those earned FTCs has not resulted in his transfer to MDOC or to prerelease custody to date, but the BOP is in the process of resolving Gibson's atypical concurrent federal and state sentences and the MDOC detainer.

As soon as Gibson is transferred to either MDOC or to prerelease custody at a RRC, the government will file a supplemental brief or a motion to dismiss the petition as moot.

Respectfully submitted,

Jerome F. Gorgon, Jr.
United States Attorney

/s/ Julie A. Beck
Julie A. Beck
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, MI 48226

Dated: November 14, 2025

(313) 226-9717
julie.beck@usdoj.gov

12

## Certificate of Service

I certify that on November 14, 2025, I electronically filed the Response to Petition for Writ of Habeas Corpus and Brief in Support with the Clerk of the Court using the ECF system and that an employee of the U.S. Attorney's office mailed a copy via the United States Postal Service to the following non-ECF participant:

>Antoiwan Gibson, Reg. #50981-039
>Milan FCI
>P.O. Box 1000
>Milan, MI 48160

/s/ Julie A. Beck
Assistant United States Attorney